Filed 1/18/24  P. v. Schaffner CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROY EMIL SCHAFFNER,<br><br>    Defendant and Appellant. | D081160<br><br><br>(Super. Ct. No. JCF005245) |

APPEAL from a judgment of the Superior Court of Imperial County, Michael Domenzain, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

Roy Emil Schaffner appeals the judgment sentencing him to prison after a jury found him guilty of drug and firearm offenses.  He contends

admission at trial of statements obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) requires reversal. We disagree and affirm.

## I.

## BACKGROUND

A. *Arrest*

While on patrol, Imperial County Deputy Sheriff Pedro Velasquez saw Schaffner driving after Velasquez had learned earlier that day Schaffner had no valid driver's license and possessed multiple firearms. He followed Schaffner into a gas station and confirmed with dispatch that his license had been suspended. Velasquez contacted Schaffner and, after noticing a passenger in the vehicle, put Schaffner in handcuffs and called for backup. Another deputy sheriff arrived about an hour later. While waiting for backup to arrive, Velasquez decided to impound Schaffner's vehicle and to do an inventory search. He asked Schaffner whether there were any guns and drugs in the vehicle, and Schaffner responded affirmatively. After the other deputy arrived and stood by Schaffner and his passenger, Velasquez searched the vehicle and found a handgun, a rifle, ammunition, bags of methamphetamine, a bag of marijuana, plastic baggies, a scale, and needles. Velasquez arrested Schaffner and took him to the sheriff's station. During the encounter at the gas station, he did not give Schaffner the warnings required by *Miranda*.[1]

---

[1] "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, . . . [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." (*Miranda, supra,* 384 U.S. at pp. 478–479.)

B.    *Interview*

At the sheriff's station, Velasquez conducted a recorded interview of Schaffner.  Before asking Schaffner any questions about the items found in the vehicle, Velasquez read from a card the following advisements:  (1) "You have the right to remain silent"; (2) "Anything you say may be used against you in court"; (3) "You have the right to the presence of an attorney before and during questioning"; and (4) "[I]f you cannot afford an attorney, one will be appointed for you free of charge before any questioning if you want."  Velasquez paused after each advisement and asked Schaffner whether he understood it, and he either nodded affirmatively or said, "Yup."  Velasquez then told Schaffner he wanted to ask some questions about what he found in Schaffner's vehicle, and Schaffner responded, "Go ahead."  During the subsequent questioning, Schaffner admitted the firearms and the methamphetamine were his.

C.    *Criminal Proceeding*

The People charged Schaffner with two counts of possession of a controlled substance while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a); counts 1 & 2)); unlawful transportation of a controlled substance (*id.*, § 11379, subd. (a); count 3); two counts of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); counts 4 & 5); and one count of possession of a controlled substance for sale (Health & Saf. Code, § 11378; count 6).  Schaffner pled not guilty to all counts.

Schaffner moved in limine to exclude the statements he made to Velasquez at the gas station and at the sheriff's station on the ground they had been obtained in violation of his *Miranda* rights.  The People opposed the motion.  The trial court held a hearing at which Velasquez testified, granted

3

the motion as to the statement Schaffner made at the gas station, and denied the motion as to the statements he made at the sheriff's station.

At trial, the People played portions of the recording of Velasquez's interview of Schaffner at the sheriff's station for the jury. On the People's motion during trial, the court dismissed count 2. The jury found Schaffner guilty on the remaining counts.

The trial court selected the conviction on count 1 (possession of a controlled substance while armed with a firearm) as the principal offense and sentenced Schaffner to prison for the middle term of three years. (Health & Saf. Code, § 11370.1, subd. (a).) The court imposed consecutive prison terms of one-third the prescribed middle term on each of the other convictions (Pen. Code, § 1170.1, subd. (a)) and stayed their execution (*id.*, § 654).

## II.

## DISCUSSION

Schaffner argues the incriminating statements he made at the sheriff's station should have been excluded because they were not preceded by adequate warnings or a valid waiver under *Miranda, supra*, 384 U.S. 436. He also argues the statements were inadmissible because they were "tainted" by Velasquez's earlier elicitation of a similar incriminating statement at the gas station before he was given *Miranda* warnings. Schaffner finally argues the admission of the statements he made at the sheriff's station was not harmless, because the People cannot show beyond a reasonable doubt the statements did not contribute to the jury's verdicts. He asks us to reverse the judgment and to remand the matter to the trial court with directions to exclude at any retrial the incriminating statements he made to Velasquez.

4

A.     *Waiver of* Miranda *Rights*

Schaffner first argues he did not validly waive his *Miranda* rights.  He asserts he "did not execute a written waiver," and complains Velasquez "simply read [him] his rights and said, 'okay' and then did not pause to insure [he] understood his rights and wished to waive them."  Schaffner contends the subsequent questioning was "infirm" and his responses should have been suppressed.  We disagree.

A suspect in law enforcement custody can waive the rights to remain silent and to have an attorney present for any questioning.  (*Maryland v. Shatzer* (2010) 559 U.S. 98, 104; *Miranda, supra*, 384 U.S. at p. 444.)  Any such waiver must be knowing, intelligent, and voluntary.  (*Montejo v. Louisiana* (2009) 556 U.S. 778, 786; *Miranda*, at p. 444.)  Where, as here, an interview is recorded, we independently determine from the totality of the circumstances whether the suspect knowingly, intelligently, and voluntarily waived his *Miranda* rights.  (*People v. Leon* (2020) 8 Cal.5th 831, 843.)

The circumstances of Velasquez's interview of Schaffner establish a valid waiver.  Although Schaffner did not sign a waiver form, a waiver of *Miranda* rights need not be in writing.  (*North Carolina v. Butler* (1979) 441 U.S. 369, 375–376 & fn. 5; *People v. Davis* (2009) 46 Cal.4th 539, 585.)  A waiver may be implied by conduct inconsistent with assertion of those rights.  (*Berghuis v. Thompkins* (2010) 560 U.S. 370, 385; *People v. Gonzales* (2012) 54 Cal.4th 1234, 1269.)  "When a suspect ' "having heard and understood a full explanation of his or her *Miranda* rights, then makes an uncompelled and uncoerced decision to talk, he or she has thereby knowingly, voluntarily, and intelligently waived them." ' "  (*People v. Krebs* (2019) 8 Cal.5th 265, 302 (*Krebs*).)  That was the situation in this case.

At the sheriff's station, Velasquez read Schaffner each of his *Miranda* rights (see fn. 1, *ante*), briefly paused after each one to ask Schaffner whether he understood it, and obtained from him an affirmative response to each one. When Velasquez next told Schaffner he wanted to ask some questions about the items found in Schaffner's vehicle, Schaffner told him to proceed and answered the questions. The recorded interview shows the questioning was not coercive, deceptive, or overbearing, and Schaffner was under no physical, psychological, or emotional duress. We thus conclude Schaffner validly waived his *Miranda* rights. (See *Gonzales, supra*, 54 Cal.4th at pp. 1268–1269 [valid waiver when "defendant both nodded his head and mouthed the word 'yes' when asked if he understood the *Miranda* warnings" and "proceeded to answer the questions posed to him"]; *People v. Sully* (1991) 53 Cal.3d 1195, 1233 [same when defendant "was informed of his *Miranda* rights, expressly affirmed his understanding of those rights, and then proceeded to answer questions and to make statements he knew were being tape-recorded"].)

B.     *Taint from Prior Unwarned Statement*

Schaffner next argues the incriminating statements he made at the sheriff's station after he received *Miranda* warnings were inadmissible because they were "tainted" by the incriminating statement he made at the gas station before he received the warnings. He contends the United States Supreme Court "disapproved of these 'two-step interrogation tactics['] " in *Missouri v. Seibert* (2004) 542 U.S. 600 (*Seibert*), and under that decision the trial court should have excluded his postwarning statements. We are not persuaded.

A suspect's incriminating statements made after receipt of *Miranda* warnings are not inadmissible simply because the suspect made a related

6

incriminating statement before receipt of the warnings. "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights." (*Oregon v. Elstad* (1985) 470 U.S. 298, 314 (*Elstad*).) The trial court found the questioning at the gas station was not coercive, and Schaffner has not challenged that finding. We have rejected his claim that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights before making the incriminating statements at the sheriff's station. Thus, those statements were not subject to exclusion as having been obtained in violation of *Miranda*. (See *Elstad*, at p. 309 ["Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made."].)

Schaffner argues *Elstad, supra*, 470 U.S. 298, does not control because this "case has shades of *Seibert*." In that case, the United States Supreme Court considered "a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession, . . . follow[ing] it with *Miranda* warnings[,] and then lead[ing] the suspect to cover the same ground a second time." (*Seibert, supra*, 542 U.S. at p. 604 (plur. opn.).) The high court held inadmissible a postwarning confession obtained under such circumstances. (*Ibid.* (plur.

7

opn.); *id.* at p. 618 (conc. opn. of Kennedy, J.).)  The facts of this case are not comparable to those of *Seibert*.

Schaffner identifies no evidence that when Velasquez asked him at the gas station whether there were drugs or guns in his vehicle Velasquez was following an official protocol designed to obtain incriminating evidence in violation of Schaffner's *Miranda* rights.  (See *Krebs, supra*, 8 Cal.5th at p. 310 [distinguishing *Seibert* based on lack of protocol].)  It appears Velasquez asked the question in preparation for impounding the vehicle and taking an inventory of its contents, not as part of a custodial interrogation of Schaffner on drug or firearm offenses.  (Cf. *id.* at p. 311 [distinguishing *Seibert* based on detective's unawareness suspect was in custody and warnings were required].)  Although Velasquez was the only questioner at the gas station and at the sheriff's station, "there was no extended questioning before *Miranda* warnings were given"; Schaffner's prewarning statements "were nonspecific and lacking in detail"; and there was a substantial lapse of time and "a change of setting before he gave the detailed confession that was ultimately used against him at trial."  (*Krebs*, at p. 310.)  *Seibert* thus does not require exclusion of the statements Schaffner voluntarily made at the sheriff's station after he received *Miranda* warnings.  (See *id.* at p. 312; *People v. Delgado* (2018) 27 Cal.App.5th 1092, 1108 ["Because defendant's warned statements were voluntary and there was no plan to bypass *Miranda*, the warned statements were admissible under *Seibert* and related cases."].)

C.    *Harmless Error*

Schaffner's last argument is that the erroneous admission of the statements he made at the sheriff's station was not harmless beyond a reasonable doubt and so requires reversal of the judgment.  Given our conclusion the statements were not obtained in violation of *Miranda, supra*,

8

384 U.S. 436, however, the trial court did not err by admitting them. Because there can be no prejudicial error requiring reversal without error (*People v. Sorden* (2021) 65 Cal.App.5th 582, 618), there is no ground for reversal here.

## III.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

BUCHANAN, J.